And move to our third case, Appeal Number 24-3215 Stevens v. DOJ. Mr. Cleveland, whenever you're ready. Good morning. May it please the court. I'm David Cleveland for appellants. Mr. Stevens, maybe you should start with a waiver. I mean, weren't all these arguments waived in the district court? The arguments were not expressly made, but they are encompassed within the arguments. But isn't that a problem, though, for you? Because a lot of the issues have to do with the affidavit, okay? The affidavit could have been fixed in the district court if you made these arguments in the district court, but you didn't. And now you're here asking us to opine on arguments that you didn't make in the district court because they're within this big umbrella of a broad argument made in the district court. Well, in the district court, we said that the search was deficient, the affidavit of Shurkamp was deficient, and we had... But you didn't say how. Well, on page... So what was the district judge to do? In our ECF 36, on page one, two, and three, we talk about you did not search all of the  On page three, we said specifically, you did not search OPLA. We made some specific arguments in the trial court. Arguments today are a twist of what we argued earlier in more detail. The search was deficient, the Shurkamp declaration was deficient. In many ways. And now we're re-articulating more fully how it was deficient. This court does have discretion to rule on these issues. There's no prejudice to ICE here. There is no new fact-finding is needed. No new evidence is to be taken. It's on the record about what was said and what was inside the Shurkamp declaration. The Shurkamp declaration indeed is deficient. And I think the good argument we have is ICE did not search all the places likely to contain responsive documents. They do not even claim they did that. Where is the requirement that they do that? That they search all areas that you identify as potentially holding responsive documents? They must search all areas that are likely to contain responsive documents. They must claim they did that and they must aver that they did that. They don't even do that. But you didn't complain about that in the district court. If you had complained about it in the district court, perhaps they could have fixed it and there would be no need for us. But here we are. We could have made different arguments in the district court, yes we could have. However, here we are and I submit to you that the search by ICE was deficient and they should be criticized for it. The Shurkamp declaration was deficient. It should be criticized. It should not be tolerated. It is a clear rule that they must aver that they searched all places likely. The district court below announced that rule herself at page 15 and 19 of her decision. Opposing counsel agrees that's the rule and opposing counsel does not even argue that they satisfy the rule. ICE disparages and trivializes this rule. They refer to it as mere magic words or as a magic phrase. Oh, if you had told us about this, we could have put the magic phrase in. They're trivializing it and suggesting that they could satisfy it by adding boilerplate. This shows that they do not have a good attitude of wanting to search for what people ask for. The agency only searched one office. They should have searched more. It is very difficult to be a FOIA requester. The deck is stacked against us. We don't have the records and we look at the agency, we see a wall, we see closed doors, we see windows with opaque curtains. We cannot go behind them. The agency itself creates records and stores them. They have a duty to store them in a way that they can be retrieved. There's no discovery in FOIA. The agency must fully discharge its duties. They must show beyond material doubt that they satisfied all the requirements of FOIA. Their search must be systematic, orderly, and comprehensive. It certainly was not. I see somewhat of a tension here. I mean, the law is requiring you to come forward with compelling evidence about why a search was inadequate. When you're challenging the reason, you have to show some reason to think that the documents would have turned up if the agency had looked for them. Okay? I'm quoting there from our Rubman case. But as you've noted, you know, you've got closed walls and, you know. What do you think you could bring forward about what other documents ICE might have that rise above the level of speculation? Do you have any evidence that there are, in fact, additional documents in ICE's possession? And can you even come up with that evidence? Well, we don't work inside ICE. We don't know exactly what they have. We do know that the three gentlemen involved here, we have Soto, Anfinson, and Hurtado, have things in common. They were born outside the United States. Each has an A number. Each was detained. They made similar requests, but then the searches were very different. So just looking at the face of it, when we have three similar requests by three similar gentlemen, why is it, why did they search differently? Why does ICE itself be inconsistent? The fact of their inconsistency shows that they're not organized and comprehensive and systematic. Well, that's not true. Maybe as to searches, they were over-inclusive. You're just assuming that they were under-inclusive. Maybe they were over-inclusive. That's why they get the presumption of good faith. That's why it's important to develop these arguments in the district court, because we don't know. We could have argued differently in the district court. Yes, we could have. However, this court should consider what is the prejudice to ICE, because there's no new fact-finding. No new evidence is needed. The arguments we're making are encompassed within the overall argument the search was defective and the Shurkamp declaration was defective. Let me clarify something, because I hear you to be saying potentially two different things. I understood clearly from your brief that you did make the general argument in the district court that the searches were defective. They were unreasonable. And we have this Supreme Court law that you can make those general arguments in district court and then come up here on appeal and add more specifics to that same argument. And you're saying, in the briefs, you were saying, I'm adding more specifics. They should have searched these particular locations, and they didn't. Or they should have used these search terms, and they didn't. So that's the argument I understand you're making in your brief. This morning, I hear you saying, we could have made different arguments. Is it you did make the argument below, and you are permissibly within Supreme Court precedent adding more specific detail here? Or are you saying, as you just said now, you should have made or could have made different arguments? Well, it's always true we could have made different arguments. We did make some specific arguments. One is noted by footnote 10 of the district court below, the three different locations that were searched, the number of locations for the three gentlemen. One was searched one location, another four locations, another five locations. That is an argument that we made. And that, I think, is very specific, and the district court recognized it. That right there is a problem for ICE. Why are they inconsistent like that? Some of the arguments today are refinements, and they're more fully explaining what's going on. I'd like you to consider this example, this consideration. ICE says each employee can store files the way they want. What works for the employee? That is a bad standard. The standard should be the employee should store records that is in the best interest of the requester. Consider if ERO has 10 component offices. In component office number one, there's an employee who says, when I get records, I'm going to put them, some in hard drive, some in the shared drive, and some I'm going to put in a cardboard box. Is that permissible? Sure it is. Now, how can the boss of that office supervise that employee? The boss says, go find records for Mr. Soto. And then the employee is going to say, yeah, OK, I searched, I found something. The boss is not in a position to supervise and evaluate what's going on. Consider that employee works in an office for a couple years. He keeps records in different ways, and then is replaced by employee number two. Employee number two says, I don't like file cabinets. I'm going to scan everything. So then the records in that office are now scanned someplace. And then if there's a request for documents, how can that employee's office be searched? And if the boss has 10 employees, each employee is doing something differently, how does the boss know what's going on? He can't evaluate his own work, his own workers. Now, we have 10 component offices. Each office says different things. Well, the head of office number one gives records. The head of office two gives records. And they go to a unit chief. How does the unit chief evaluate what he gets? There's no uniformity. There's no comprehensiveness here. ICE is immunizing itself from FOIA requesting by having a system of, we let the employees do what they want. And if we let the employees do what they want, then whatever search they do, it cannot be challenged. We don't know what they did wrong. So it's wrong of ICE to allow this system of employees can do what they want. ICE should have searched not only outside of ERO, it should have searched better inside of ERO. Ms. Shurkamp mentions in her declaration we have seven headquarters divisions. We have 24 field offices. We have 7,000 employees. None of them were searched. What is she talking about? Not one employee searched anywhere here. And paragraph 19, if you look on page 30, paragraph 19 goes on for like three pages. If it goes in the middle of page 32, there's a long sentence. And it's hard to read. The sentence says the ICE FOIA office sends it to an IDU unit chief, blah, blah, blah. And then the unit chief sends it to a POC, point of contact. And then the POC sends it to individuals and component offices. But it also says the ICE FOIA office sends it to the unit chief. The unit chief does not send it to POCs. The unit chief sends it to individuals and component offices. Paragraph page 32 is a confusion in and of itself. Ms. Shurkamp doesn't know what happened. She doesn't know about her own agency. Mr. Soto made a request. What search was done? We're not told. Ms. Shurkamp fills her declaration with a boilerplate in hypothetical things. We don't know. Ms. Shurkamp doesn't know what search happened. Ms. Shurkamp doesn't give evidence of knowing the rule, we must search all places likely to find the documents. She doesn't announce that rule. So we can assume that she didn't tell that rule to the unit chief, and unit chief didn't tell it to the head of the office, and the head of the office didn't tell it to the employees. So there's no awareness of we must keep records comprehensively so we can retrieve them later. Let me ask you quickly about your argument about the presumption of good faith. And you're asking us to overrule circuit precedent. What's your position on waiver? Have you waived that argument by not presenting it to the district court below? And if you don't believe you haven't waived it, we need compelling reasons to overturn circuit precedent. What about this case presents a compelling reason? So it's a two-part question. And the good faith argument was not made clearly in the district court below. However, it adds on to the burden of something to keep it. When the requester is trying to get records, this is yet another burden he faces. He doesn't know what's going on. The agency gives declarations. And then on top of all the darkness and opaqueness, the courts have given the agency a presumption on top of all these other benefits. Recently, the Supreme Court has been reversing cases where they're merely following precedent. The text of FOIA does not give a presumption to the agency concerning good searches. It does not. It does give a presumption in other areas, but not this area. It is something that this court should declare. The foundations of the good faith presumption is weak. It is not in the text. It's not really in the history. And it's unfair to the requester. So I would suggest that this court bear that in mind as it considers the burdens that the requester faced in this case. All right, Mr. Cleavon. Thank you. Mr. Hartzler. May it please the court, counsel. The reality of FOIA litigation on the ground in the district court is that there's typically a lot of back and forth. And I can give the court an example that's happening downstairs right now in an active district court case involving the same FOIA requester, Jackie Stevens. In the case that's happening downstairs, Stevens submitted a FOIA request to Customs and Border Protection asking for documents relating to a particular person reminiscent of this case. The agency looked. They came back and said, we can't find anything. Stevens said through counsel, how can that be? I know that this person had an encounter with Border Protection on a particular date. Armed with the date, they found it. What had happened was that the FOIA request described the person as a citizen, and at least according to CBP, the person's a non-citizen. So with the date, they were able to find it. It's a great example of the back and forth that can yield productions of documents when the parties engage with each other at the district court level. I would think this court would want to encourage FOIA requesters to do that when they're in the district court rather than waiting until they're in the Seventh Circuit to bring new arguments. On Stevens's last visit to this court in 2021, Stevens v. State, this court saw, again, the extensive back and forth that then district court judge Lee oversaw where the parties were negotiating search terms, using different search terms depending on what was coming back, and that resulted in the production of a bunch of documents. So I would think that new arguments on appeal are perhaps not what this court wants to incentivize. If there are no questions, we'll stand on the urge of the court to. I have some questions. Since you're talking about specifics and practice, why did it take five years, for example, with Soto's request? I don't have an answer for that. I know that many agencies have an enormous FOIA backlog that they work through. I believe for many of the agencies, after a lawsuit is filed, there's basically two tracks. There's sort of the regular FOIA request, and then there's the litigation track. I don't know how long it might have taken absent the filing of this lawsuit in 2021. I believe that all seven agencies that were issued in the district court moved for summary judgment fairly quickly by FOIA standards to my understanding. I think in 2022 was when we moved. But I don't remember the dates of the FOIA requests themselves. OK. Another question.  Stevens is able to point to both in this situation and in other cases where there were different locations I searched for very similar requests. Why does that not rise to evidence she's able to put forward to show that ICE should have handled certain requests differently? Well, she hasn't offered any reason to think that it wasn't a belt and suspenders approach in the case of an analyst searching in more than one database. There's no reason to think that the analyst who searched in one database was under-inclusive, as Judge Kirsch mentioned. Absent some reason to think that there's a certain type of document that didn't get produced and we think it would be held. I know the FOIA requesters say that the agencies are black boxes. But the truth is they know a lot about them over the years through FOIA cases. And if there's a reason to point to and say, well, you didn't produce this type of record that we know results from an encounter or a detention or whatever, that would be a scenario where you could easily see a court finding that there's reason to question whether the search was adequate. But just saying analyst A searched in two databases and analyst B searched in one database, I don't see as being that much on which to hang your hat if your point is the search was inadequate. All right. Another question. Stephens has pointed us to Yee versus City of Escondido, Supreme Court, 1992. When an issue has been properly presented, quote, properly presented party can make any argument in support of that issue. Parties are not limited to the precise arguments they made below, end quote. Is it necessary for you to prevail, for you to call everything Ms. Stephens is asserting on appeal waiver when she's offering more detail for her general argument that the searches were defective? It's not necessary, Your Honor. For some of the arguments, they simply are waived, like using different search terms for different requests. Different locations for different requests is alluded to in a couple of sentences in her district court brief. So there's something there. Again, I mean, it's the good faith expectation that's presumed in terms of what agencies are doing when we have analysts who are tasked with executing searches based on their knowledge and familiarity with the agency where they preserve records. I do think, and I think Your Honor is referring to toward the end of Stephens' reply brief, there's some talk about it. To my mind, that makes a little more sense in an appeal that's a pure legal question. I don't know who's interpreting the statute right. If it's this side, they win. If it's that side, they win. We're just going to rule and send it back. Because if we send it back, the district court has to rule, and then it'll just come up on appeal by the loser anyway. This is a little bit different where, I mean, there's no scenario, I don't think, where this court could reverse the district court and direct the district court to enter summary judgment for Stephens. I mean, the best that could happen for Stephens would be remand for further fact finding, essentially, about what was done to search for these records. And so that's why I would think that in a circumstance like that, the court would want to incentivize litigants to put their best arguments forward the first time around, rather than making a certain set of arguments the first time and then the second set the second time. Can I push you a little bit on the search terms? Why is that waiver when, in the district court, she said the searches were defective, they were unreasonable? It doesn't sound to me like saying a sentence like that is preserving an argument. I mean, I don't know how the agency is supposed to respond when the requester hasn't identified what she's talking about. There's just nothing in the district court briefing that even alludes to search terms, other than the factually incorrect claim that the agencies didn't provide the search terms, which the district court correctly found was false. OK. Another question for you. One of Professor Stevens' arguments is that ICE says, in the Shurkamp affidavit, the subject matter led it to think that the Enforcement and Removal Operations Division, ERO, was the only division that had responsive records. So the answer was the subject matter. Do you think this explanation was sufficiently detailed under our case law? I do. The declarative erred that all of the analysts are executing these searches based on their understanding of where documents are held. And I guess, in all three instances, the analyst decided that ERO was the place to search, and so they did. And I do think that if Professor Stevens wanted to argue otherwise, she should have done it the first time around. Question about lack of uniformity. So is there an argument that the lack of uniformity in which databases are searched shows a lack of good faith? Because I'm looking at a chart here. EARM was searched for all three. CIS for two. Obviously, more for another, Hurtado Valencia. But isn't the agency leaving itself vulnerable to these kinds of attacks by not creating a protocol of search these three databases always? I think you could just as easily say the lack of uniformity could be interpreted as evidence of extra good faith if they went over and beyond for some of the requests and not for one of them. Absent some other indication, some missing thing that you would expect to be found, or we know that these types of records are held in a certain area, I don't think it's evidence of bad faith to say that they looked in some places for one type of request and not for the other. Absent further questions, we'd ask that the court affirm. Thank you. OK, thank you, Mr. Hartzler. Mr. Cleveland, would you like a minute on rebuttal? You're out of time, but I'll give you a minute if you'd like it. Footnote 10 of the district court below this opinion talks specifically about the different locations. Not only was the argument made in the district court, but the district court ruled upon it. Why were they searching different places? It's the duty of the agency to say that, to avert that no other places are likely to have records. They must search all places likely. The fact that they are so inconsistent is evidence that they're loose and sloppy. So I would suggest that that argument was clearly made and clearly ruled upon. So therefore, it's properly before you. Thank you, Mr. Cleveland. The case will be taken under advisement. Thank you both, Mr. Cleveland and Mr. Hartzler.